IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| HIAWATHA COAL COMPANY,<br><br>    Appellant and Cross Appellee,<br><br>v.<br><br>KENNETH A. RUSHTON, Trustee<br><br>    Appellee,<br><br>and<br><br>KENNETH A. RUSHTON, Trustee,<br><br>    Cross Appellant,<br><br>v.<br><br>HIAWATHA COAL COMPANY, C.O.P. COAL DEVELOPMENT COMPANY, ANR COMPANY, INC., PAUL KINGSTON, CHARLES REYNOLDS, AQUILA, INC., JOHN DAVID KINGSTON, JR., WORLD ENTERPRISES, STANDARD INDUSTRIES, FIDELITY FUNDING, SECURITY FUNDING, ABM, JOSEPH O. KINGSTON, and JOHN T. MORGAN,<br><br>    Cross Appellees. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS APPEAL AS MOOT<br><br><br><br><br><br><br><br>Case No. 2:10-CV-267 TS |

1

This matter is before the Court on appellee Kenneth A. Rushton, Chapter 7 Trustee of the Estate of C.W. Mining Company ("Trustee"), and Interested Parties Rhino Energy LLC ("Rhino") and Castle Valley Mining LLC's ("Castle Valley") (collectively referred to hereinafter as "Movants"), Joint Motion for Dismissal of Appeal as Moot.[1]  For the reasons discussed more fully below, the Court will grant the Motion.

## I.  BACKGROUND

This dispute arises out of the involuntary Chapter 7 bankruptcy proceeding of C.W. Mining Company ("CWM").  Before entering bankruptcy, CWM was in the business of mining coal.  CWM's primary asset was an underground coal mine located in Emery County, Utah—the Bear Canyon mine.  CWM's assets also included miscellaneous mining equipment, two coal mining agreements, and mining permits.  At issue in this appeal is a coal mining agreement entered into in 1997 by CWM and C.O.P. Coal Development Company ("COP") (the "COP Agreement") and various coal mining assets used at the Bear Canyon mine.

Hiawatha Coal Company ("Hiawatha") is also in the business of mining coal.  In June 2008, COP attempted to terminate the COP Agreement with CWM and enter into a new mine operating agreement with Hiawatha.  In addition, CWM attempted to sell virtually all of CWM's mine assets to Hiawatha under a conditional sales agreement that never closed.  Hiawatha took possession of the mine and began operating it in anticipation of closing on the transfer.

The attempted transfer of assets to Hiawatha and the new COP agreement entered into with Hiawatha all occurred during the "gap period" between the CWM petition of involuntary

---

[1]Docket No. 26.

bankruptcy filed January 8, 2008, and the entry of order for relief issued September 26, 2008. The CWM bankruptcy case was converted to a Chapter 7 case on November 13, 2008, and, on November 19, 2008, Kenneth A. Rushton (the "Trustee") was appointed as Chapter 7 Trustee of CWM.

On December 30, 2008, the Trustee filed an adversary action (the "Adversary Action") against Hiawatha seeking to unwind the transfer of assets to Hiawatha. On May 7, 2009, the bankruptcy court entered a memorandum decision and order in the Adversary Action denying a motion by Hiawatha that sought dismissal of the case and/or joinder of a number of ancillary parties. On May 8, 2009, the bankruptcy court granted summary judgment for the Trustee in the Adversary Action.[2] In granting summary judgment for the Trustee, the bankruptcy court established that a transfer of mere possession was a transfer that could be avoided and found that the Trustee had satisfied his burden to avoid the transfer of the mine assets to Hiawatha.

Pursuant to an order issued February 12, 2010, the bankruptcy court denied Hiawatha's claim for an improver's lien against the mine assets and interpreted the continuous operations clause under the COP Agreement. By orders entered February 11, 2010, and March 2, 2010, the bankruptcy court granted the Trustee's claim to recover possession of the mine assets from Hiawatha. On February 12, 2010, Hiawatha surrendered possession of the Bear Canyon mine and most of the mine assets to the Trustee.

---

[2]In the same Memorandum Decision and Order, the bankruptcy court denied a Motion for Summary Judgment filed by Hiawatha and rejected Hiawatha's argument that the Trustee was legally unable to assume the COP Agreement.

On August 4, 2010, the bankruptcy court entered a sale order (the "Sale Order") approving the sale of CWM's mine assets to Rhino for $15 million. The Sale Order expressly found that Rhino was a good faith purchaser and provided that:

> If, in the absence of any person or entity obtaining a stay pending appeal, the Debtor and the Buyer close under the Sale Agreement, the Buyer shall be deemed to be acting in "good faith" and shall be entitled to the protection of § 363(m) of the Bankruptcy Code as to all aspects of the transaction under and pursuant to the Sale Agreement if this Order or any authorization contained herein is reversed or modified on appeal.[3]

Pursuant to its terms, the Sale Order closed on August 25, 2010. At the closing Rhino paid the purchase price to the Trustee, and the Trustee conveyed the mine assets to Castle Valley, Rhino's wholly owned subsidiary. Pertinent to this appeal, Hiawatha did not object to, or seek to stay, the closing of the Sale Order. Since that time, Rhino and Castle Valley have expended substantial sums of money and time in reliance on the conveyance they received through the Sale Order.

In its Opposition to the instant Motion, Hiawatha identifies the following four issues it is raising on appeal:[4]

> Issue 1: whether the bankruptcy court committed reversible error by failing to join required parties under Rule 19;

---

[3] Docket No. 27 Ex. 2, at 12.

[4] In its Designation of Record and Statement of Issues on Appeal, Hiawatha provided the Court a list of nine issues to be raised on appeal. The four issues included in Hiawatha's Opposition appear to be a summary of the same nine issues and pertain to the same objections to the bankruptcy court's orders. Therefore, for purposes of this Motion, the Court will consider the issues provided in the briefing by Hiawatha. *See* Docket No. 3, at 5-6.

Issue 2: whether the bankruptcy court's summary judgment that Hiawatha gave no "value" for purposes of §[]549(b) for the transferred assets (including the disputed assets) was reversible error;

Issue 3: whether the bankruptcy court's ruling that post-petition improvements for purposes of 11 USC §[]550(e) are automatically "property of the estate" for purposes of 11 USC §[]550(a) [was] reversible error; and

Issue 4: whether the bankruptcy court's ruling that Hiawatha was not a good faith transferee or improver under 11 USC §[]550(e) was an abuse of discretion.

## II.  DISCUSSION

Movants assert that the Court is without jurisdiction to determine this appeal because the relief sought by Hiawatha would affect the validity of the Sale Order in contravention of the mootness doctrine found in 11 U.S.C. § 363(m).  In the event the Court finds § 363(m) inapplicable, Movants argue that the Court should apply the doctrine of equitable mootness and dismiss Hiawatha's appeal.

A.   11 U.S.C. § 363(m)

Subsection 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

Here, Hiawatha does not dispute that Rhino is a good faith purchaser.  It is also undisputed that Hiawatha did not seek to stay the Sale Order.  Thus, "[t]he mootness question turns on what relief is available to [Hiawatha] if it were to prevail in this appeal."[5]  "[Section]

---

[5] *C.O.P. Coal Dev. Co. v. C.W. Mining Co. (In re C.W. Mining Co.)*, 641 F.3d 1235, 1239 (10th Cir. 2011) (citing *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) (noting that an appeal should be dismissed as moot if it is "impossible for the court to grant any effectual

363(m) forecloses any remedy . . . that would affect the validity of the trustee's sale. But it does not preclude a remedy that would not affect the validity of the sale."[6] Furthermore, "[t]he burden of showing mootness is on the trustee, which here means showing that [Hiawatha] would not have such a remedy."[7]

Movants assert that the crux of Hiawatha's appeal is an attempt to reverse the bankruptcy court's orders that established the Trustee's ownership of the mine assets and permitted the Trustee to recover CWM's mine assets from Hiawatha. The reversal of those orders would conflict with the sale of the mine assets to Rhino. To the extent Hiawatha is seeking to reverse the transfer of the mine assets to Rhino, such a reversal would directly affect the validity of the Sale Order and, therefore, would violate § 363(m).

Hiawatha contends that the Court may grant it meaningful relief because pertinent provisions of the Asset Sale Agreement constitute admissions by Movants that Hiawatha's appeal is not moot.[8] According to Hiawatha, the sale of the CWM mine assets to Rhino was, to a significant degree, engineered around Hiawatha's claims. Hiawatha asserts that the documents

---

relief whatever") and *Osborn v. Durant Bank & Trust Co. (In re Osborn)*, 24 F.3d 1199, 1203 (10th Cir. 1994) (holding "that because it is not impossible for the court to grant some measure of effective relief, the Osborns' appeal is not moot")).

[6]*Id*.

[7]*Id.*

[8]A number of documents from the bankruptcy case pertain to the sale of CWM's mine assets to Rhino, including the following: the Asset Sale Agreement, dated May 3, 2010; the First Amendment to the Asset Sale Agreement, dated May 13, 2010; the Second Amendment, dated June 2, 2010; and the Sale Order, dated August 4, 2010. Movants question the relevancy of the Asset Sale Agreement and Amendments after the closing of the Sale Order. For purposes of this Motion, however, the Court will review and apply the terms of each of the agreements.

referencing the sale embody contingencies in the event Hiawatha is eventually able to prevail on its claims. Hiawatha specifically identifies six provisions of the Assets Sale Agreement that it believes demonstrate that the sale itself is not jeopardized by its appeal.

After thorough review of the relevant agreements, the Court finds Hiawatha's reliance on the six provisions of the Asset Sale Agreement unavailing. The provisions cited by Hiawatha are representative of the protections afforded all buyers in bankruptcy proceedings. It appears that Hiawatha would have this Court read the provisions designed to protect the buyer in such a way as to infer a tacit invitation to seek redress from the Trustee regarding any allegedly unsettled claims to the mining assets. It is clear from the sale agreements that the bankruptcy court was aware of, and ruled on, each of Hiawatha's claims to the property before including each asset in the Sale Order. The bankruptcy court expressly excluded assets from the Sale Order that it found were not a part of the CWM estate. In this manner, Hiawatha was able to receive a number of assets to which Hiawatha had an ownership right.[9]

Hiawatha's claim that the sale agreements somehow anticipate the "continuing litigation of Hiawatha's claims to the mine assets by appeal or otherwise" is unsupported by the documentation memorializing the sale. The very title of the Sale Order—"Order Authorizing Sale of Mine Assets Free and Clear of Liens, Claims, Encumbrances, and Interests and Authorizing the Assumption and Assignment of Executory Contracts under 11 U.S.C. §§ 363 and

---

[9] *See* Docket No. 35, at 15-16 and Docket No. 28 Ex. 2, at 12 ("The Mine Assets exclude, among other things, the following assets . . . "Hiawatha Equipment List", and "Hiawatha Equipment List / AFAB Leased to HCC for CW Mining").

365"—contradicts Hiawatha's interpretation of the agreements.[10] For these reasons, the Court rejects Hiawatha's interpretation of the Asset Sale Agreement.

Hiawatha also asserts that the Court can fashion meaningful relief without affecting the Sale Order because, as to each of the issues it raises on appeal, the Court may simply grant Hiawatha a claim to the proceeds of the sale to Rhino. Movants contend that such a recovery would be improper because the "proceeds of the sale were not segregated in order to allow Hiawatha to preserve its claim to those proceeds."[11]

In *Freightliner v. Central Refrigerated Service (In re Simon Transportation Services)*,[12] the Tenth Circuit addressed "the limited ability for third parties to recover the proceeds of an asset sale in certain circumstances, while strictly applying the rule that the sale itself cannot be reversed."[13] The *Freightliner* court held that equitable relief is only available "in the absence of a stay, when the proceeds of the sale have not been commingled with the rest of the bankruptcy estate's funds."[14] The court provided the following factors as favoring its conclusion.

> First, Congress intended a sale of assets under § 363 to be final unless the sale is stayed pending appeal. The segregation of funds displays the parties' recognition that the sale is not yet final, placing all interested parties on notice. Allowing the proceeds of a sale to pass to a third party absent a stay or segregation of funds fails to place parties on notice, thereby reintroducing uncertainty to asset sales—a result Congress clearly sought to avoid. Second, allowing the proceeds of a sale

---

[10]*See* Docket No. 35, at 15.

[11]Docket No. 36, at 10.

[12]138 F. App'x. 52 (10th Cir. June 2, 2005) (unpublished).

[13]*Id*. (internal citations omitted).

[14]*Id*. at 56.

to pass to a third party absent a stay or segregation of funds hampers the bankruptcy estate's ability to finalize payments to outstanding creditors. Without some mechanism—such as a stay or segregation of funds—for placing creditors on notice as to the total amount of funds available to satisfy obligations, final payments to creditors would remain uncertain. Finally, these requirements, staying the auction or segregating funds, are not overly burdensome requirements.[15]

Here, the Trustee has provided evidence that—besides the $1,916,707.77 distributed to lien holders and the $2,145,329.05 set aside pursuant to the Sale Order—the proceeds of the sale to Rhino have been commingled with other funds in the general account for this case.[16] It is also undisputed that Hiawatha did not seek to segregate any amount of the proceeds to put other creditors on notice of its claims to the proceeds. The Court finds the reasoning of *Freightliner* persuasive and will therefore dismiss any claim by Hiawatha against the proceeds of the Sale Order as moot.

In sum, because the relief Hiawatha seeks in this appeal would necessarily affect the validity of the Sale Order or would improperly seek recovery from commingled sale proceeds, the Court finds that Movants have met their burden to establish mootness under § 363(m). For these reasons, the Court is without jurisdiction to hear Hiawatha's appeal.

B.    EQUITABLE MOOTNESS

As an alternative ground for granting the instant Motion, the Court will consider whether this appeal is moot under the doctrine of equitable mootness. In a recent decision in a related matter, the Court addressed the issue of whether the doctrine of equitable mootness should apply

---

[15]*Id.*

[16]*See* Docket No. 36 Ex. A, at 3.

in the Chapter 7 context.[17]  For the same reasons provided in that case, the Court will apply the doctrine of equitable mootness to this appeal.

"The equitable mootness doctrine allows a court to decline to hear a bankruptcy appeal, even when relief could be granted, if implementing the relief would be inequitable."[18]  The Tenth Circuit formally adopted the doctrine of equitable mootness in *In re Paige*.[19]  In *Paige*, the court set out the following six-part test for determining whether an appeal is equitably moot:

> (1) Has the appellant sought and/or obtained a stay pending appeal? (2) Has the appealed plan been substantially consummated? (3) Will the rights of innocent third parties be adversely affected by reversal of the confirmed plan? (4) Will the public-policy need for reliance on the confirmed bankruptcy plan—and the need for creditors generally to be able to rely on bankruptcy court decisions—be undermined by reversal of the plan? (5) If appellant's challenge were upheld, what would be the likely impact upon a successful reorganization of the debtor?  And (6) based upon a quick look at the merits of appellant's challenge to the plan, is appellant's challenge legally meritorious or equitably compelling?  These six factors are not necessarily conclusive, nor will each factor always merit equal weight.[20]

The Court will address each of the six factors in turn.

1.   STAY

> "The first question in an equitable mootness inquiry is whether the appellant secured a stay to prevent execution of the reorganization plan." This inquiry really involves two questions: (1) Did the party seeking reversal try to obtain a

---

[17]*See ANR Co., Inc. v. Kenneth A. Rushton, Trustee, et al.*, No. 2:10-CV-79 (D. Utah May 2, 2012).

[18]*C.O.P. Coal*, 641 F.3d at 1239-40 (internal citation omitted).

[19]584 F.3d 1327 (10th Cir. 2009).

[20]*Id*. at 1337-39.

stay? (2) Assuming the party seeking reversal sought a stay, was that party successful in obtaining a stay pending appeal?[21]

The Tenth Circuit has instructed that "both of these questions are significant."[22] "On the one hand, an appellant's complete and unjustified failure to seek a stay will often make it unfair for the court to grant relief—especially if that relief may affect third parties."[23] "On the other hand, [the Court] will be more inclined to accommodate an appellant who has diligently but unsuccessfully pursued a stay pending appeal, even if awarding him relief may adversely affect third parties."[24] "Thus, [the Court] will not only look to whether a stay has been obtained; [but] will also inquire into whether the appellant has sought a stay pending appeal."[25]

Here, it is undisputed that Hiawatha did not seek a stay of either the Sale Order or, indeed, of any order of the bankruptcy court giving rise to this appeal. Because Hiawatha failed to take any action in this regard, this factor weighs in favor of finding this appeal equitably moot.

---

[21]*Id.* at 1341 (quoting *United States ex rel. FCC v. GWI PCS 1 Inc. (In re GWI PCS 1 Inc.)*, 230 F.3d 788, 800 (5th Cir. 2000)).

[22]*Id.*

[23]*Id.* (citing *Trone v. Roberts Farm, Inc. (In re Roberts Farms, Inc.)*, 652 F.2d 793, 798 (9th Cir. 1981) ("An entirely separate and independent ground for dismissal has also been established because Appellants have failed and neglected diligently to pursue their available remedies to obtain a stay of the objectionable orders of the Bankruptcy Court and have permitted such a comprehensive change of circumstances to occur as to render it inequitable for this court to consider the merits of the appeal.")).

[24]*Id.* (citing *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 144 (2d Cir. 2005) (stating that "[w]e insist that a party seek a stay even if it may seem highly unlikely that the bankruptcy court will issue one")).

[25]*Id.*

2.     SUBSTANTIAL CONSUMMATION

"The second consideration in the mootness inquiry is whether the reorganization plan has been substantially consummated."[26]  "In determining whether a plan has been substantially consummated, [the Court will] apply the Bankruptcy Code's three-part definition."[27]

> The Bankruptcy Code defines "substantial consummation" of a reorganization plan as:
> "(A) transfer of all or substantially all of the property proposed by the plan to be transferred;
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
> (C) commencement of distribution under the plan."[28]

The very nature of a sale order in a liquidation proceeding contemplates such actions provided in the Bankruptcy Code's definition of "substantial consummation."  Once a sale order becomes effective, it is contemplated that there will be a transfer of all or substantially all of the property and a commencement of distribution.  Unlike the majority of reorganization plans, the assets are not restructured; rather, they are liquidated.

In this case, CWM's assets were conveyed to Rhino in exchange for $15,000,000. Movants assert that this transaction has been substantially consummated because: "Payments have been made, possession and control of highly regulated properties have been assumed,

---

[26]*Id*.

[27]*Sutton v. Weinman (In re Centrix Fin. LLC)*, 394 F. App'x 485, 487 (10th Cir. 2010) (unpublished).

[28]*Paige*, 584 F.3d at 1341-42 (quoting 11 U.S.C. § 1101(2)).

millions of dollars of equipment and repairs have been ordered, people have been hired, and extensive work has already gone into preparing to mine coal."[29]

"Hiawatha does not dispute Movants' characterization of the sale as being consummated," rather, Hiawatha asserts that the degree of completeness of the sale is of no consequence to this appeal because the Asset Sale Agreement allows for Hiawatha's pursuance of its claims without creating a circumstance which would upset the sale. Hiawatha's arguments on this point are premised on its contention that the provisions of the Asset Sale Agreement allow the return of the mining assets to Hiawatha without violating the Sale Order. The Court finds Hiawatha's asserted interpretation of the Asset Sale Agreement equally unavailing in the context of equitable mootness.

Hiawatha has alleged as an alternative form of relief that it should be allowed to collect money damages from the proceeds of the sale to Rhino. To the extent Hiawatha were able to recover from the sale proceeds this factor would be inapplicable.

Because the principal form of relief Hiawatha seeks through this appeal is the return of property included among the CWM mining assets and transferred to Rhino, Hiawatha's assertion that it is not creating a circumstance that would affect the sale is disingenuous. For this reason, this factor weighs in favor of finding this appeal equitably moot.

---

[29]Docket No. 27, at 19-20 (citing Docket No. 28 Exs. 3, 16).

3.	EFFECT ON THIRD-PARTIES

"The effects that reversal will have on non-party creditors is probably the foremost concern in [the Court's] analysis of equitable mootness."[30]

The Trustee has provided evidence that $1,916,707.77 of the sale proceeds have been distributed to lienholders and other creditors of CWM.[31] If the Sale Order were to be reversed, the Trustee would be tasked with recovering these funds. This would necessarily cause a hardship to those non-party creditors who would be required to re-pay the amount of the proceeds each has received.

Though not necessarily third-party creditors, it is under this factor that Rhino and Castle Valley have intervened in this Motion. As interested parties—the purchasers of the CWM mining assets—Rhino and Castle Valley are concerned with how this Court's ruling may affect property they have rightfully purchased. After expending considerable sums of money and time in reliance on the Sale Order, Rhino and Castle Valley are compelled to defend the assets they purchased.

The Court's foremost concern in this appeal is for the rights of Rhino, Castle Valley, and those third-party creditors who have received payment from the proceeds of the sale. Because these parties stand to lose the value of their exchange through this appeal, this factor weighs in favor of finding this appeal equitably moot.

---

[30]*Paige*, 584 F.3d at 1343 (quoting *Wooley v. Faulkner (In re SI Restructuring, Inc.)*, 542 F.3d 131, 136 (5th Cir. 2008) ("The ultimate question to be decided is whether the Court can grant relief without undermining the plan and, thereby, affecting third parties.")).

[31]Docket No. 36 Ex. A, at 3.

4.   PUBLIC POLICY

"This factor 'reflects a court's concern for striking the proper balance between the equitable considerations of finality and good faith reliance on a judgment and the competing interests that underlie the right of a party to seek review of a bankruptcy court order adversely affecting him.'"[32]

> In [*Paige*], [the Tenth Circuit] acknowledged that "completed acts in accordance with an unstayed order of the bankruptcy court must not thereafter be routinely vulnerable to nullification if a plan of reorganization is to succeed." And [further] found it "equally important that a court not reverse a bankruptcy plan if an appellate reversal . . . would create a nightmarish situation for the bankruptcy court on remand and make reconstructive relief extremely improbable." But [the Tenth Circuit] also considered the seriousness of the appeal allegations as a "countervailing concern" that could weigh against a determination of equitable mootness.[33]

As has been discussed previously, Rhino, Castle Valley, and CWM's creditors have an interest in the finality of the unstayed Sale Order. They have exercised good faith reliance on the Sale Order being a valid judgment of the bankruptcy court entitling them to the proceeds for which they have provided value or, in the case of the creditors, for which they are owed for past value provided. While cognizant of Hiawatha's right to seek review of the bankruptcy court's orders—which, undoubtedly, have an effect on Hiawatha—here, the Court is persuaded that Hiawatha, in a delinquent fashion, is seeking a second day in court.

---

[32]*Paige*, 584 F.3d at 1347 (quoting *First Union Real Estate Equity & Mortg. Inv. v. Club Assocs. (In re Club Assocs.)*, 956 F.2d 1065, 1069 (11th Cir. 1992)).

[33]*In re Centrix*, 394 F. App'x at 492 (quoting *Paige*, 584 F.3d at 1347).

Furthermore, the issues raised in this appeal are not "troubling allegations" of bad faith dealings or a lack of disinterestedness on the part of the Trustee.[34] The majority of issues raised by Hiawatha relate to the bankruptcy court's classification of assets. These allegations are not of themselves troubling allegations that "bring to light some issue that [speaks] to the integrity of the bankruptcy process."[35] For these reasons, the Court find this factor weighs in favor of finding this appeal equitably moot.

5. IMPACT ON NEW REORGANIZATION

"The fifth factor a court should consider in determining whether an appeal is equitably moot is the impact of reversal upon the likelihood of a new, successful reorganization."[36]

Movants assert that a reversal of the orders resulting from the Adversary Action could "have the chaotic and useless effect of putting Hiawatha back into possession of valuable and sensitive assets, title to which is irrevocably vested in Castle Valley by virtue of the asset sale and Section 363(m)."[37] Hiawatha does not dispute this outcome.

The Court notes however that to the extent Hiawatha merely seeks money damages from the proceeds of the sale to Rhino, this factor is inapplicable. If Hiawatha were able to recover

---

[34]*Paige*, 584 F.3d at 1347 ("[T]here are countervailing concerns that outweigh the public policy interest in finality of bankruptcy court decisions in this case. [Appellant] raises troubling allegations of bad-faith dealings between the debtor . . . and the trustee, and of a lack of disinterestedness on the part of the trustee.").

[35]*Id.*

[36]*In re Centrix*, 394 F. App'x at 493.

[37]Docket No. 27, at 22.

from the proceeds of the sale, such would not cause a reversal of the Sale Order and, thus, a new sale would not be necessary.

Based on the foregoing, the Court finds that this factor does not favor either party and is inapplicable to the case at hand.

    6.    MERITS

"The final factor in evaluating whether an appeal is equitably moot involves a 'quick look at the merits of appellant's challenge to the plan' to determine if it is 'legally meritorious or equitably compelling.'"[38]

Movants assert that this appeal is close to frivolous. The instant appeal involves CWM's efforts to transfer its mining assets to Hiawatha during the gap period between the date of involuntary petition and entry of the order for relief and appointment of the Trustee. According to Movants, this is an indefensible transaction because—without court approval—CWM sought to defeat the effect of the involuntary bankruptcy proceedings by transferring all of its mining assets to Hiawatha for no money and the mere assumption of a minor part of CWM's pre-petition debt. The Court would further note that the relationship between CWM and Hiawatha casts suspicion on the attempted transfer. Hiawatha and CWM are closely related entities, having several officers and shareholders in common, sharing the same registered address and agent, and each having shareholders who are members of the Kingston family and the Davis County Cooperative.

---

[38]*In re Centrix*, 394 F. App'x at 493-94.

Hiawatha contends that this factor weighs heavily in its favor. According to Hiawatha, "[t]he whole of the transfer of assets to Hiawatha was set aside by the bankruptcy court based upon what Hiawatha asserts was its finding that Hiawatha had not given 'value' for purposes of §549(b) because the assumption of the debt by Hiawatha was of . . . [CWM]'s pre-petition obligations."[39] Hiawatha is confident this finding will be set aside as clearly erroneous, in part, because "Hiawatha paid literally millions of dollars to maintain and operate the mine, to say nothing of the millions of dollars in liabilities (all post-petition, incidentally) owed by . . . [CWM] it assumed and paid."[40]

The Court is mindful of the resources expended by Hiawatha in reliance on its attempted purchase of the mining assets from CWM. Nonetheless, the timing of the attempted purchase and details of the exchange cause the Court to question, even at this early stage, the merits of Hiawatha's claims. On balance of these considerations, the Court finds that this factor supports a finding that this appeal is equitably moot.

7.     EQUITABLE MOOTNESS CONCLUSION

In sum, the Court finds that review of the above factors supports a finding that this appeal is equitably moot.

---

[39] Docket No. 35, at 23.

[40] *Id.*

## III.  CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the Trustee, Rhino, and Castle Valley's Joint Motion for Dismissal of Appeal as Moot (Docket No. 26) is GRANTED.  The Clerk of Court is directed to close this case forthwith.

DATED   May 16, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge